# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLIE CASTILLO,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 19-cv-4002** |
| | : | |
| **OFFICER BRYAN GUZLEY,** *et al.*, | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**Joseph F. Leeson, Jr.**                                                                    **October 8, 2019**
**United States District Judge**

      This matter comes before the Court by way of a Complaint lodged by Charlie Castillo, proceeding *pro se*. (ECF No. 2.) Also before the Court are Castillo's Applications to Proceed *In Forma Pauperis* (ECF Nos. 1, 7), his Motion to Have the Court Mail Copies (ECF No. 5), and his "Petition for a Copy of Booking Photo and Assign[ment] of Counsel" (ECF No. 9). Because it appears that Castillo is unable to afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, the Complaint will be dismissed in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Castillo will be permitted to file an Amended Complaint within thirty days.

## I.     FACTS[1]

      Castillo, a pretrial detainee currently incarcerated at the Lehigh County Jail, brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights seeking to assert claims for illegal search, false arrest, false imprisonment, excessive force, illegal seizure,

---

[1] The facts set forth in this Memorandum are taken from the Complaint Castillo lodged with the Court (ECF No. 2).

and municipal liability, among others.  (ECF No. 2 at 3, 6-8.)[2]  In the Complaint, Castillo names

the following Defendants: (1) Police Officer Bryan Guzley of the Allentown Police Department;

(2) Police Officer Shade, Guzley's partner;[3] (3) the Chief of Police of the Allentown Police

Department;[4] (4) the Mayor of the City of Allentown;[5] (5) Marisa R. Lopez Rodriguez, M.D. of

St. Luke's Hospital, Emergency Room Department in Allentown; (6) an Attending "John Doe"

M.D.; and (7) Israel Colon-Cabeza.  (ECF No. 2 at 2-4.)

Castillo alleges that on or about June 22, 2019, he got into an argument with Luis Colon-

Cabeza[6] over money Colon-Cabeza owed Castillo.  (*Id.* at 6.)  The argument between Castillo

and Luis Colon-Cabeza resulted in a "physical altercation[,]" which prompted Luis Colon-

Cabeza to call the police.  (*Id.*)  Castillo asserts that Luis Colon-Cabeza "filed a false report"

with the police.  (*Id.*)  According to Castillo, the police "officers [then] entered [Castillo's]

apartment without a warrant, arrested [Castillo], put [him] in restraints and escorted [him] to the

police car."  (*Id.*)  Castillo further asserts that once he was inside the front seat of the police car

"for questioning," he inquired about his rights, and Officer Guzley then "slammed [Castillo's]

---

[2]  The Court adopts the pagination supplied by the CM/ECF docketing system.

[3]  The Complaint does not provide a first name for Officer Shade.

[4]  Castillo does not identify the Chief of Police by name, rather he refers to the Chief solely by
his title.

[5]  Castillo also fails to identify the Mayor of the City of Allentown by name.

[6]  On page six of the Complaint, Castillo refers to Luis Colon-Cabeza, who is not named as a
defendant, and asserts that Luis Colon-Cabeza "filed a false report" with the police.  (ECF No. 2
at 6.)  With respect to the named Defendant, Israel Colon-Cabeza, Israel is mentioned only once
in the Complaint's factual allegations, on page eight, wherein Castillo asserts that "Israel Colon-
Cabeza's statement to police contained partial truths and exaggerations of facts which resulted in
police action under color of law[.]"  (ECF No. 2 at 8.)  There is no explanation of whether these
two individuals are related, if at all, or if they are, in actuality, the same individual who utilizes
two different first names.

face off of the dashboard, causing an open wound on the bridge of [his] nose, cuts to [his right] eyebrow …, and a black eye." (*Id.*)

Following this "unprovoked assault," Castillo alleges that he "requested immediate medical attention at the ER to ensure [he] sustained no permanent injuries and as proof of [his] mistreatment." (*Id.* at 7.) Castillo contends that upon arrival at the Emergency Room Department at St. Luke's Hospital, Officers Guzley and Shade "painfully and torturously restrain[ed] [him], while the medical personnel who told [the Officers] to 'hold [him]' took [Castillo's] blood, AGAINST [his] adamant refusal." (*Id.*.) Additionally, Castillo contends that on the way to the hospital, the Officers confiscated his wallet, which contained his public transportation passes, bankcards, state ID, his Social Security card, and his birth certificate. (ECF No. 2 at 7.) Once at the hospital, Castillo alleges, the Officers then confiscated his glasses and his cell phone. (*Id.*) Finally, Castillo asserts more generally that "no one read [him his] Miranda Rights" at any time from his first contact with Officers Guzley and Shade through his arrival at Leigh County Jail. (*Id.*)

## II.     STANDARD OF REVIEW

The Court will grant Castillo leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, the Complaint fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations and generalized statements

do not suffice to state a claim.  *See id.*  As Castillo is proceeding *pro se*, the Court construes his

allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

In the Complaint, Castillo seeks to bring claims for violations of his civil rights pursuant

to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal

court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Whether a defendant is acting under color of state law — i.e., whether the defendant is a state

actor — depends on whether there is "such a 'close nexus between the State and the challenged

action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Leshko*

*v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).

> To answer that question, [the United States Court of Appeals for the Third
> Circuit has] outlined three broad tests generated by Supreme Court
> jurisprudence to determine whether state action exists: (1) whether the
> private entity has exercised powers that are traditionally the exclusive
> prerogative of the state; (2) whether the private party has acted with the
> help of or in concert with state officials; and (3) whether the state has so
> far insinuated itself into a position of interdependence with the acting
> party that it must be recognized as a joint participant in the challenged
> activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

"A defendant in a civil rights action must have personal involvement in the alleged

wrongs."  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Moreover, "[b]ecause

vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution."  *Iqbal*, 556 U.S. at 676.

**A.      Official Capacity Claims Against the Officers, Chief of Police and the Mayor**

Castillo seeks to bring § 1983 claims against the Chief of Police of the Allentown Police Department and the Mayor of Allentown, as well as Officers Guzley and Shade, in their official capacities.  (ECF No. 2 at 3, 8.)  Claims against city officials named in their official capacity are indistinguishable from claims against the city.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky*, 473 U.S. at 166.  In other words, Castillo's official capacity claims are effectively claims against the City of Allentown.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the defendant "had knowledge of similar unlawful conduct in

the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

Alternatively, a plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 f.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Here, Castillo has not plead facts sufficient to state a plausible *Monell* claim. Castillo's primary relevant allegation is that the Mayor and the Chief of Police, in their official capacities, "are directly responsible for police actions through hiring, training, and supervisory functions of their stations, in accord with local and state law." (ECF No. 2 at 8.) Castillo does not specify the exact custom or policy that he alleges resulted in a violation of his constitutional rights, s*ee McTernan*, 564 F.3d at 658, nor does Castillo allege facts to demonstrate that the City failed to supervise, train, or discipline its municipal employees (in this instance, police officers,) in a manner that amounts to deliberate indifference. *See Forrest*, 2019 WL 2998601, at *8. Castillo's conclusory allegations and generalized statements against the City are insufficient to state a plausible *Monell* claim. *See Iqbal*, 556 U.S. at 678. Accordingly, Castillo's official capacity claims against Defendants will be dismissed without prejudice.

### B. Claims Against Medical Personnel at St. Luke's Hospital

The Court reads Castillo's Complaint as seeking to bring a Fourth Amendment unreasonable seizure claim against two employees of St. Luke's Hospital, Marisa R. Lopez

Rodriguez, M.D. and a "John Doe" Attending M.D., with respect to his blood being drawn against his consent. Castillo's § 1983 claims against these medical personnel also fail to set forth a plausible claim for relief. At the outset, the Complaint does not allege sufficient facts to support an inference that these Defendants — who are private employees of a local hospital — are state actors subject to liability under § 1983. Pursuant to § 1983, action under color of state law requires that the one liable under that statute have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *Harvey v. Plains Twp. Police Dep' t*, 635 F.3d 606, 609 (3d Cir. 2011)).

Here, nothing in the Complaint suggests that the medical personnel at St. Luke's involved in Castillo's blood draw are state actors, as nothing suggests that they were employed by or under contract with the City of Allentown. *See Talbert v. Kaplan*, Civ. A. No. 12-6533, 2013 WL 4434214, at *4 (E.D. Pa. Aug. 20, 2013) (concluding that private trauma surgeon at medical center was not a state actor for purposes of § 1983 where he was not employed by, or under contract with, the department of corrections or the corporate prison health care provider, and treatment began prior to incarceration). Rather, they are privately employed individuals who happened to be working on June 22, 2019, when Castillo requested that he be taken to the hospital by police for treatment. *See Carver v. Plyer*, 115 F. App'x 532, 537-38 (3d Cir. 2004) (holding that "St. Luke's is not a state actor for purposes of section 1983 under any of the possible tests used to determine whether one's conduct is attributable to the state[,]" where plaintiff asserted that the hospital became a state actor when "it acted in conjunction with police to restrain and treat [plaintiff] without her consent.") To the extent Castillo alleges that the medical personnel at St. Luke's "told [the police] to 'hold [him]'" while his blood was drawn against his consent, that general statement is not sufficient to allege that the medical personnel

conspired with the police to detain and force treatment on Castillo.[7] *See Carver*, 115 F. App'x at 538. The Complaint fails to allege sufficient facts to state a plausible claim of state action on the part of these Defendants. Therefore, Castillo's claims against Marisa R. Lopez Rodriguez, M.D.[8] and a "John Doe" Attending M.D. will be dismissed without prejudice.

## C. Claims Against Israel Colon-Cabeza

As the Court previously noted, whether a defendant may properly be considered a state actor for purposes for § 1983 liability depends on whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. *See Leshko*, 423 F.3d at 339. As the Third Circuit has explained, "a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a

---

[7] Castillo does allege, in a conclusory manner, that the "attending medical professional who drew [his] blood … acted against [his] consent … while acting in conspiracy with the officers under color of law to shift blame [for his] injuries from the officers, to [Castillo] — a non-combatant, cooperative detainee." (ECF No. 2 at 8.)

This statement standing alone is insufficient to make Castillo's claim plausible because it constitutes a "'naked assertion[]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted). To demonstrate a claim has facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Castillo's generalized and conclusory statement that the attending medical profession acted "in conspiracy" with the police does not meet the plausibility standard. Rather, his statement represents a pleading that is "'merely consistent with' a defendant's liability," but one that "'stops short of the line between possibility and plausibility[.]'" *Id.* The Complaint fails to allege any additional facts to show that the purpose of directing the Officers to hold Castillo during the blood draw was done for any purposes beyond the necessary medical diagnosis and treatment Castillo required. *Cf. Carver*, 115 F. App'x at 537 (acknowledging that multiple Circuits "have held that the use of police officers to assist in 'the exercise of self-help' does not create a sufficient conspiracy with a private person to deprive an individual of their rights").

[8] With respect to Marisa R. Lopez Rodriguez, M.D., the Court notes that the Complaint makes no factual allegations regarding her own individual actions and personal involvement in the alleged wrongs beyond identifying her as the supervisor for an Attending "John Doe" M.D. Accordingly, the claims against her must also be dismissed based on Castillo's failure to plead her personal involvement. *See Rode*, 845 F.2d at 1207.

constitutional right acts 'under color of state law' for purposes of § 1983." *Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998). To demonstrate the requisite level of joint participation and collaboration, the plaintiff must allege:

> the existence of a pre-arranged plan [between the police and a private individual or entity] by which the police substituted the judgment of private parties for their own official authority. Absent allegations ... tending to show such a plan, [a private party cannot] be said to have engaged in the "concerted" or "joint action" with the police necessary to bring them within the scope of a § 1983 claim.

*Cruz v. Donnelly*, 727 F.2d 79, 80 (3d Cir. 1984)

Castillo's Complaint fails to allege facts sufficient to support a plausible claim that Defendant Israel Colon-Cabeza may be considered a state actor in this case. Castillo does not allege any facts regarding a prearranged plan between Colon-Cabeza and the police. Rather, Castillo contends that Israel Colon-Cabeza's statement to the police contained "partial truths and exaggerations of fact which resulted in police action under color of law[.]" (ECF No. 2 at 8.) However, "[m]erely calling the police, furnishing information to the police, or communicating with a state official does not rise to the level of joint action necessary to transform a private entity [or individual] into a state actor." *Cooper v. Muldoon*, Civ. A. No. 05-4780, 2006 WL 1117870, at *2 (E.D. Pa. Apr. 26, 2006) (citing cases). The same is true even if the information provided to the police is false. *See Kahermanes v. Marchese*, 361 F. Supp. 168, 171 (E.D. Pa.1973) ("The deliberate giving of false information by an individual to a police officer to cause the arrest of another does not give rise to a cause of action under the Civil Rights Acts."). Furthermore, he has not alleged with any specificity the nature of the alleged false statements. Accordingly, Castillo's claims against Israel Colon-Cabeza[9] will be dismissed without prejudice.

---

[9] Regardless of whether Israel Colon-Cabeza, the named Defendant, and Luis Colon-Cabeza, who is not named as a defendant, are the same individual or different individuals, the Court's

**D.     Claims Against Officers Guzley and Shade in their Individual Capacities**

*1.     Fifth Amendment – Miranda Warning Claim*

It appears that Castillo seeks to bring a § 1983 claim arguing that the Officers violated his right against self-incrimination under the Fifth Amendment in violation of *Miranda v. Arizona* because "no one read [Castillo his] Miranda rights" at any time from his "first contact with the officers to [his] arrival at Lehigh County Prison[.]"  (ECF No. 2 at 7.)  It is well recognized that "a plaintiff may not base a § 1983 claim on the mere fact that the police questioned her in custody without providing *Miranda* warnings when there is no claim that the plaintiff's answers were used against her at trial."  *Renda v. King*, 347 F.3d 550, 552 (3d Cir. 2003) (citing *Chavez v. Martinez*, 538 U.S. 760, 772 (2003) (holding that a "failure to read *Miranda* warnings to [plaintiff] did not violate [plaintiff's] constitutional rights and cannot be grounds for a § 1983 action."); *see also Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994) (observing "that violations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself").

Here, Castillo has done nothing more than allege that he was never read his *Miranda* warnings with respect to his arrest on or about June 22, 2019.  There are no allegations that he was questioned in a custodial interrogation, that he provided answers to law enforcement during that time, that any subsequent criminal charges were brought against him, or that his statements to law enforcement were used against him in a subsequent trial.  Accordingly, Castillo's Fifth Amendment claim will be dismissed without prejudice.

---

analysis is equally applicable with respect to the actions of a private party in calling the police and providing information to the Officers.

### 2. *Claims Regarding the Search of Castillo's Apartment*

Castillo's Complaint asserts that the Officers entered his apartment without a warrant. (ECF No. 2 at 6.) It appears that Castillo seeks to bring a Fourth Amendment claim based on an illegal search of his home. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To search a person's home and belongings, police officers ordinarily must first seek a warrant based on probable cause supported by oath or affirmation. Warrantless searches are presumptively unreasonable under the Fourth Amendment." *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996). Here, Castillo alleges that the "Officers entered [his] apartment without a warrant[.]" (ECF No. 2 at 6.) Accordingly, Castillo has sufficiently stated a plausible claim that the Officers violated his Fourth Amendment right to be free from unreasonable searches and seizures, and Castillo will be permitted to proceed on this claim.

### 3. *Claims Regarding Arrest and Imprisonment*

Castillo also appears to bring a Fourth Amendment challenge that he was falsely arrested and detained in violation of his constitutional rights. To state a claim for false arrest under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. To state a claim for false imprisonment, a plaintiff must establish that he was unlawfully detained, which, in the context of an arrest, generally depends on whether the detention was supported by probable cause. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012).

Castillo's false arrest and false imprisonment claims are based entirely on conclusory, generalized allegations regarding the Officers' conduct. For example, Castillo alleges simply that the Officers "arrested [him], put [him] in restraints and escorted [him] to the police car." (ECF No. 2 at 6.) However, Castillo does not allege facts that would plausibly establish he was arrested or detained without probable cause. In fact, the Complaint specifically indicates that Luis Colon-Cabeza called the police to the scene where he and Castillo had had a physical altercation, suggesting that the Officers may have been acting directly in response to that call and potentially with probable cause.[10] However, without a more detailed factual version of events leading to his arrest and detention, Castillo has not alleged a plausible claim that the arrest or detention was improper. Importantly, Castillo fails to even allege the offense for which he was arrested.[11] Accordingly, the Court will dismiss these claims without prejudice. *See Godfrey v. Pennsylvania*, 525 F. App' x 78, 80 (3d Cir. 2013) (per curiam) (explaining that, to the extent plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to facts suggesting that Defendant … lacked probable cause to believe he had committed the offense for which he was arrested").

### 4. *Claims Regarding Excessive Force*

Castillo appears to bring claims against Officer Guzley and Officer Shade for excessive force in violation of the Fourth Amendment. "[C]laims that law enforcement officers have used

---

[10] The Court makes no determination regarding the existence of probable cause at the time of Castillo's arrest or detention.

[11] Although the Complaint is silent on the nature of the offense for which Castillo was arrested, a search of the publicly available court docket for the Court of Common Pleas of Lehigh County demonstrates that Castillo's criminal proceedings are for various assault related charges including aggravated assault, simple assault, a disorderly conduct offense for engaging in fighting, and a harassment offense for subjecting another to physical contact. *See Commonwealth v. Castillo*, CP-39-CR-0003167-2019 (Lehigh Cnty. Ct. of Common Pleas).

excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test.") (citing *Graham*, 490 U.S. at 395). "Courts determine whether the force used is 'objectively reasonable' based on the totality of the circumstances, … and certain factors, including: 'the facts and circumstances of each particular case, ... the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (citations omitted).

Here Castillo alleges that after the Officers entered his apartment, they arrested him, put him in handcuffs, and escorted him to their police car. (ECF No. 2 at 6.) He specifically asserts that the handcuffs used cut his left wrist. (*Id.*) Once inside the police car, Castillo contends that Officer Guzley "slammed [his] face off the dashboard" of the vehicle "causing an open wound on the bridge of [his] nose, cuts to [his right] eyebrow, and a black eye" on his right side. (*Id.*) Castillo's Complaint further indicates that the wound on the bridge of his nose was open and bleeding, and that he suffered a contusion on his right eye and on the back of his head, all of which culminated in soreness in the back of his neck, at the base of his skull. (*Id.*) Castillo alleges that this assault was "unprovoked" and he describes his own behavior during the course of these events as that of a "non-combatant, cooperative detainee." (*Id.* at 6, 8.) Although "[n]ot every push or shove … violates the Fourth Amendment[,]" *see Graham*, 490 U.S. at 396, the facts alleged at this time, which the Court must accept as true, indicate that Castillo did not pose

an immediate threat to the Officers' safety once he was restrained in handcuffs inside the police car.  Nor does it appear based on the facts alleged that Castillo was actively trying to resist arrest or evade the police at the time the force was applied here.  Construing Castillo's Complaint liberally and accepting his allegations as true, the Court finds that the Complaint contains sufficient factual matter to state a plausible claim for excessive force against the Officers with respect to Castillo's arrest, restraint in handcuffs, and the events that occurred in the police car.  *See Iqbal*, 556 U.S. at 678.

### 5.    *Claims Regarding Confiscated Property*

Castillo also seeks to challenge the Officers' confiscation of his wallet,[12] glasses, and cell phone on the way to, and while at, the hospital.  The Court understands Castillo to be challenging the confiscation of his property as an illegal seizure in violation of the Fourth Amendment.  A search incident to a lawful arrest does not violate the Fourth Amendment.  *United States v. Robinson*, 414 U.S. 218, 234–35 (1973).  Similarly, a search of personal effects as part of a routine administrative procedure at a police station during booking is not unreasonable and does not violate the Fourth Amendment.  *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983).  Much like his claims for false arrest and false imprisonment, Castillo does not assert any facts indicating that the confiscation of his personal effects was anything more than a search incident to a lawful arrest or a search as part of a routine administrative procedure.  Without a more detailed factual version of events leading to his arrest and the subsequent confiscation of these items, Castillo has not stated a plausible claim at this time.  This claim will also be dismissed without prejudice.

---

[12]  Castillo indicates in the Complaint that his wallet contained multiple forms of identification including "public transport passes, bankcards, state ID, [his] Social Security card, and [his] birth certificate[.]"  (ECF No. 2 at 7.)

The Court also reads the Complaint to challenge the drawing of Castillo's blood without his consent as an unlawful seizure by the Officers in violation of the Fourth Amendment.  It is well established "[b]lood draws are 'searches' under the Fourth Amendment." *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2543 (2019); *see also Anthony v. City of New York*, 339 F.3d 129, 142 (2d Cir. 2003) (recognizing that blood tests "constitute searches under the Fourth Amendment.") (citing *Schmerber v. California*, 384 U.S. 757, 767–68 (1966)).  Where "officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Missouri v. McNeely*, 569 U.S. 141, 152 (2013).

From the face of the Complaint, it appears that Castillo's blood may have been drawn without a warrant.  However, Castillo does not allege sufficient facts suggesting that the warrantless blood draw to which he was subjected was conducted based on a request or order that came from the Officers, themselves.  Rather, Castillo asserts that he independently requested "immediate medical attention at the ER to ensure that [he] sustained no permanent injuries[.]" (ECF No. 2 at 7.)  Thereafter, at his request, the Officers transported him to St. Luke's for treatment, at which time, the medical personal treating him conducted the blood draw in question.  Although Castillo claims the Officers restrained him while medical personnel drew his blood, that fact alone is not sufficient to demonstrate that the draw was conducted for any law enforcement purpose, rather than for medical diagnosis and treatment.  *See Simmons v. Mason*, Civ. A. No. 17-8886, 2019 WL 4525613, at *5 (S.D.N.Y. Sept. 18, 2019) (noting that "[w]here blood or urine samples are taken for medical purposes, rather than to facilitate prosecution of the patient, the Fourth Amendment is not implicated.") (relying on *Anthony v. City of New York*, 339

F.3d at 129, 142 (2d Cir. 2003); and *Makas v. Miraglia*, Civ. A. No. 05-7180, 2007 WL 152092, at *6 (S.D.N.Y. Jan. 23, 2007)). Accordingly, as there is no allegation that the blood draw occurred at the request of the Officers for an evidentiary purpose, these claims will be dismissed without prejudice.

### E. Castillo's Motions for Miscellaneous Relief

Also pending before the Court are two motions Castillo filed subsequent to the submission of his Complaint. The first of these is entitled Motion to Have the Court Mail Copies (ECF No. 5). In the Motion, Castillo asks that the Court direct the Clerk to mail a time-stamped copy of his Complaint to him, to mail time-stamped copies of the Complaint to the Defendants in this matter, and to serve a copy of the Complaint on each Defendant. The Court will grant this motion in part and deny it without prejudice in part. To the extent Castillo requests that the Clerk mail an additional time-stamped copy of the Complaint to Castillo, the Court will grant the motion and direct the Clerk to mail a copy of the Complaint docketed at ECF No. 2 to Castillo. The Court will deny the motion without prejudice, however, to the extent Castillo requests that time-stamped copies of the Complaint be mailed to, and served upon, Defendants. At this early stage of the litigation, and in light of the Court's dismissal of several claims without prejudice with leave to amend, mailing time-stamped copies or directing service of the current Complaint is premature. Upon the filing of an amended complaint that cures the defects outlined herein, the Court will then consider the issue of service upon Defendants.

Castillo's second motion is entitled "Petition for a Copy of Booking Photo and Assign[ment] Counsel," (ECF No. 9), which the Court construes as a Motion. In this Motion, Castillo indicates that he is having difficulty obtaining a copy of his booking photo ("mug shot") which he seeks to demonstrate the extent of his alleged injuries. (ECF No. 9 at 1, 5, 6, 8.) It also

appears that Castillo is seeking medical records from St. Luke's related to his treatment at that hospital. (*Id.* at 1.) Additionally, Castillo requests appointment of counsel because he "has no legal background" and needs counsel to "help . . . litigate [his] action in court." (*Id.* at 1.) To the extent Castillo seeks copies of his booking photo or St. Luke's medical records for use as evidence in this case, the Court construes this as a discovery request which is premature given that the Court is granting leave to amend and Defendants have not yet been served. Accordingly, the Motion will be denied without prejudice to Castillo's right to seek discovery in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules, once the formal discovery process, if any, has commenced.[13] Additionally, Castillo's request for appointment of counsel is also premature at this stage of the litigation. The Court will therefore deny the Motion without prejudice to Castillo's right to file a renewed motion for appointment of counsel in the future in accordance with the factors set forth by the Third Circuit in *Tabron v. Grace*, 6 F.3d 147, 155-57 (3d Cir. 1993).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Castillo leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim with the exception of the following claims: (1) the Fourth Amendment illegal search claim related to the Officers' warrantless entry into Castillo's apartment; and (2) the Fourth Amendment claims for excessive force during the course of his arrest and in the police car. The dismissal of Castillo's remaining claims will be without prejudice to Castillo's right to file an amended complaint within thirty (30) days in the event he can allege facts to cure the defects of

---

[13] Discovery requests should be made to opposing counsel in the first instance and are generally not filed with the Court unless a dispute arises. *See* L. Civ. R. 26.1

any of the dismissed claims as discussed above.  If Castillo does not file an amended complaint,

the Court will direct service on Officers Guzley and Shade in their individual capacities only.

The Court will defer service at this time pending Castillo's decision to file an amended

complaint.  An appropriate Order follows.

**BY THE COURT:**

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**