# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLIE CASTILLO, : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 19-cv-4002 |
| : | |
| OFFICER BRYAN GUZLEY, *et al.*, : | |
|     Defendants. : | |

## O P I N I O N

**Joseph F. Leeson, Jr.**                                                                **May 28, 2020**
**United States District Judge**

This matter comes before the Court by way of a Second Amended Complaint submitted by Charlie Castillo, proceeding *pro se*. (ECF No. 24.) For the following reasons, the Second Amended Complaint is dismissed in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Castillo is permitted to proceed on three limited claims.

**I.     FACTUAL ALLEGATIONS[1] AND PROCEDURAL HISTORY**

Castillo, a prisoner currently incarcerated at State Correctional Institution – Phoenix ("SCI Phoenix"), brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights seeking to assert claims for illegal search, false arrest, false imprisonment, excessive force, illegal seizure, and municipal liability, among others. (ECF No. 24 at 3, 5-7.)[2] In the Second Amended Complaint, Castillo names the following Defendants: (1) Police Officer Bryan Guzley of the Allentown Police Department; (2) Police Officer Shade, Guzley's partner;[3]

---

[1] The facts set forth in this Memorandum are taken from the Second Amended Complaint Castillo submitted to the Court (ECF No. 24).
[2] The Court adopts the pagination supplied by the CM/ECF docketing system.
[3] The Second Amended Complaint does not provide a first name for Officer Shade.

1
052820

(3) Marisa R. Lopez Rodriguez, M.D. of St. Luke's Hospital, Emergency Room department in Allentown; and (4) a John Doe Defendant who Castillo alleges is employed as a medical professional in the Emergency Room at St. Luke's Hospital and was under the supervision of Lopez Rodriguez.[4]  (ECF No. 24 at 2-4, 6.)

As this Court has previously recognized, this case already has a rather muddled procedural history due to Castillo's regular and continued piecemeal filings.  Castillo initiated this action by way of the original Complaint (ECF No. 2) submitted on or about September 3, 2019.  By way of a Memorandum and Order dated October 8, 2019, the Court granted Castillo leave to proceed *in forma pauperis*, screened his original Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), dismissed the original Complaint in part for failure to state a claim and allowed his Complaint to proceed on two limited claims.  (ECF Nos. 10, 11.)  The Court gave Castillo thirty (30) days to elect to proceed on those two limited claims or to file an amended complaint. (ECF No. 10, 11.)

Rather than electing to proceed on the two limited claims or to file an amended complaint, Castillo filed a Motion on October 17, 2019, seeking to withdraw his Complaint. Eleven days later, Castillo filed an Amended Complaint (ECF No. 13).  Noting the inconsistency between the Motion seeking to withdraw the Complaint and the filing of an Amended Complaint, the Court ordered Castillo to inform the Court within thirty (30) days whether he sought to proceed in this case by filing either a notice of voluntary withdrawal or filing a notice specifically indicating his intention to stand on the Amended Complaint (ECF No. 13). (Order, ECF No. 14, 2-3.)

---

[4]  As alleged in the Second Amended Complaint, it appears the John Doe Defendant is a male employed as either a nurse, doctor, or physician's assistant.  (ECF No. 24 at 6.)

In response, Castillo filed a Notice to Proceed, which the Court construed as his election to stand on the Amended Complaint. However, approximately two weeks later, and before the Court had an opportunity to screen the Amended Complaint pursuant to § 1915, Castillo filed a Motion to Add Additional Defendants (ECF No. 17). As a result of Castillo's piecemeal attempt to amend the Amended Complaint to add additional defendants, the Court ordered Castillo to file a second amended complaint in this matter so that he could include all the relevant facts and allegations pertinent to his claims in a single, comprehensive document so that the Court could properly screen his claims. Castillo's Second Amended Complaint (ECF No. 24) is now before the Court for purposes of conducting the required screening under § 1915.

In the Second Amended Complaint, Castillo alleges that on the evening of June 22, 2019, between 8:00 and 9:00 p.m., he got into an argument with Luis Colon-Cabeza over money Colon-Cabeza owed Castillo.[5] (ECF No. 24 at 5.) Castillo alleges that this argument lead to a "physical altercation" between him and Colon-Cabeza, and "the police were called" as a result. (*Id.*) According to Castillo, upon their arrival, the police "enter[ed] [his] apartment without a warrant." (*Id.*) Castillo was then "arrested" and "put . . . in restraints and escorted . . . to the police car[.]" (*Id.*) Castillo asserts that once he was inside "the front seat of the [police] cruiser for further questioning[,]" he "began asking the police about some of [his] rights[,]" and that Officer Guzley "responded to [his] question[s] by slamming [Castillo's] face of [sic] the

---

[5] While there are some differences between the original Complaint and the Second Amended Complaint, a substantial majority of the facts and claims set forth in the Second Amended Complaint are similar to (and in some instances, identical to) the facts and claims set forth in the original Complaint. The most noteworthy changes are that Castillo did not name the Chief of Police or the Mayor of Allentown as Defendants in his Second Amended Complaint, nor did Castillo name Colon-Cabeza as a Defendant.

dashboard, causing an open wound on the bridge of [his] nose, cuts to [his right] eyebrow …, and a black eye[,] . . . and head trauma." (*Id.*)

Following this "unprovoked assault, sustained at the hands of . . . Guzley and . . . Shade[,]" Castillo alleges that he "requested immediate medical attention[.]" (*Id.* at 6.) It appears that EMS was called, and Castillo asserts that, upon their arrival, Shade and Guzley "instructed" EMS personnel to "check [Castillo] out on site and to medically clear [him] so [he could] be taken to the police station to be process[ed.]" (*Id.*) Castillo contends that he "refuse[d] on site treatment and insisted" that he "be taken at the ER to ensure [he] sustained no permanent injuries and as proof of [his] mistreatment[.]" (*Id.*) Castillo alleges that he was then transported by ambulance to St. Luke's Hospital where Guzley and Shade "instructed" the John Doe Defendant, under the supervision of Lopez Rodriguez, "to take [his] blood[.]" (*Id.*)

According to Castillo, the John Doe Defendant responded to the Officers' request "to take [his] blood and test it for alcohol and d[ru]gs by asking the police to hold [him] while [his] blood was forcibly taken" by the John Doe Defendant. (*Id.*) Castillo asserts that the Officers further "injured" him during this process by "painfully and torturously restraining" Castillo. (*Id.* at 6-7.) Castillo alleges that he never consented to the blood draw, and that the John Doe Defendant acted under orders from the Officers, and thereby conspired with the Officers under color of law to violate Castillo's rights and to "shift [the] blame" for Castillo's injuries from the Officers to Castillo. (*Id.* at 7.) Castillo further asserts that Lopez Rodriguez attempted to cover-up the assault by the Officers when she ordered that Castillo stay in restraints and lied by "stating that [Castillo] was unrul[]y and combative."[6] (*Id.*)

---

[6] Castillo claims that he "was cooperative up until [he] was assaulted by the police and they tried to cover it up by telling . . . EMS to check [him] out on site [and] telling . . . hospital personnel to take [his] blood and check it for d[ru]gs and alcohol[.]" (*Id.* at 7.)

4
052820

Additionally, Castillo alleges that the Officers confiscated his personal property. Specifically, Castillo claims that before he was put into the ambulance to be transported to St. Luke's, "Guzley took [his] phone and wallet" which contained multiple forms of identification and public transportation passes, including his bankcards, state ID, his Social Security card, and his birth certificate. (*Id.* at 6.) Once at the hospital, Castillo alleges, the Officers then confiscated his glasses, keys, and wristwatch. (*Id.*) Based on all of these allegations, Castillo seeks punitive damages in the amount of $1,500,000 for his "mental anguish[,] pain [and] suffering[,] emotional distress[,] seizure of [his] personal property without just cause and forcing a medical procedure without consent." (*Id.* at 5.)

## II.  STANDARD OF REVIEW

As noted *supra*, the Court previously granted Castillo leave to proceed *in forma pauperis* based on his apparent inability to pay the fees to commence this action. (ECF Nos. 10, 11.) Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Second Amended Complaint if, among other things, the Second Amended Complaint fails to state a claim.[7] Whether the Second Amended Complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Second Amended Complaint contains "sufficient

---

[7] The Second Amended Complaint, once submitted to the Court, serves as the governing pleading in the case because an amended pleading supersedes the prior pleading. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (per curiam) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." (internal citations omitted)).

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations and generalized statements do not suffice to state a claim.  *See id.*  As Castillo is proceeding *pro se*, the Court construes the allegations set forth in the Second Amended Complaint liberally.  *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); *see also Argentina v. Gillette*, 778 F. App'x 173 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").

### III. DISCUSSION

In the Second Amended Complaint, Castillo seeks to bring claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).

> To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Moreover, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A. Official Capacity Claims Against the Officers

Castillo seeks to bring § 1983 claims against Officers Guzley and Shade in their official capacities. (ECF No. 24 at 2.) As this Court previously explained in its October 8, 2019 Opinion (ECF No. 10), claims against city officials named in their official capacity are indistinguishable from claims against the city. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). In other words, Castillo's official capacity claims against the Officers are effectively claims against the City of Allentown. *See id.* at 166 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v.*

*City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

Alternatively, a plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 f.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Here, despite the Court's prior Opinion outlining the pleading requirements, Castillo has again failed to plead sufficient facts to state a plausible *Monell* claim. Castillo does not specify the exact custom or policy that he alleges resulted in a violation of his constitutional rights, s*ee McTernan*, 564 F.3d at 658, nor does Castillo allege adequate facts to demonstrate that the City failed to supervise, train, or discipline these Officers in a manner that amounts to deliberate indifference. *See Forrest*, 2019 WL 2998601, at *8. Castillo's conclusory allegations and generalized statements against the City are insufficient to state a plausible basis for municipal liability. *See Iqbal*, 556 U.S. at 678. Accordingly, Castillo's official capacity claims against

Defendants Guzley and Shade are dismissed with prejudice as any additional amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (holding that amendment by pro se prisoner would be futile when prisoner "already had two chances to tell his story").

### B.     Claims Against Medical Personnel at St. Luke's Hospital

With respect to the medical personnel at St. Luke's Hospital, Castillo's Second Amended Complaint is largely a duplicative recitation of the allegations and claims set forth in the original Complaint. Accordingly, much like Castillo's original Complaint, the Court reads the Second Amended Complaint as seeking to bring a Fourth Amendment unreasonable seizure claim with respect to his blood being drawn without his consent against two employees of St. Luke's Hospital – Marisa R. Lopez Rodriguez, M.D. and a John Doe Defendant. Despite being given the opportunity to amend, Castillo's § 1983 claims against these medical personnel again fail to set forth a plausible claim for relief. As before, Castillo once again does not allege sufficient facts to support an inference that these Defendants — who are private employees of a local hospital — are state actors subject to liability under § 1983. Pursuant to § 1983, action under color of state law requires that those liable under that statute have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *Harvey v. Plains Twp. Police Dep' t*, 635 F.3d 606, 609 (3d Cir. 2011).

As was the case with his original Complaint, Castillo's Second Amended Complaint does not allege that the medical personnel at St. Luke's involved in Castillo's blood draw are state actors, as nothing suggests that they were employed by or under contract with the City of Allentown. *See Talbert v. Kaplan*, Civ. A. No. 12-6533, 2013 WL 4434214, at *4 (E.D. Pa. Aug. 20, 2013) (concluding that private trauma surgeon at medical center was not a state actor

for purposes of § 1983 where he was not employed by, or under contract with, the department of corrections or the corporate prison health care provider, and treatment began prior to incarceration). Rather, they are privately employed individuals who happened to be working on June 22, 2019, when Castillo requested that he be taken to the hospital for treatment. *See Carver v. Plyer*, 115 F. App'x 532, 537-38 (3d Cir. 2004) (holding that "St. Luke's is not a state actor for purposes of section 1983 under any of the possible tests used to determine whether one's conduct is attributable to the state[,]" where plaintiff asserted that the hospital became a state actor when "it acted in conjunction with police to restrain and treat [plaintiff] without her consent").

To the extent Castillo continues to allege that the medical personnel at St. Luke's asked "the police to hold [Castillo] while [his] blood was forciably [sic] taken" by the John Doe Defendant in response to the Officer's request to test his blood for drugs and alcohol (ECF No. 2 at 6), this generalized statement is not sufficient to allege that the medical personnel conspired with the police violate Castillo's civil rights.[8] *See Carver*, 115 F. App'x at 538. The Second

---

[8] Castillo does allege, in a conclusory manner, that the "attending medical professional who drew [his] blood … acted against [his] consent … under the Officers['] order to take [his] blood for alcohol and durg [sic] testing and by doing so violated [his] civil rights while acting in conspiracy with the officers under color of law to shift blame [for his] injuries from the officers, to" Castillo. (ECF No. 24 at 7.) This statement standing alone is insufficient to make Castillo's claim plausible because it constitutes a "'naked assertion[]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

To demonstrate a claim has facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Castillo's generalized and conclusory statement that the attending medical professional acted "in conspiracy" with the police does not meet the plausibility standard. Rather, his statement represents a pleading that is "'merely consistent with' a defendant's liability," but one that "'stops short of the line between possibility and plausibility[.]'" *Id.* Like the original Complaint, the Second Amended Complaint similarly fails to allege any additional facts to show that requesting the Officers hold Castillo during the blood draw was done as a result of a conspiracy between the medical personnel at St. Luke's and Officers to violate Castillo's civil rights. *Cf. Carver*, 115 F. App'x at 537 (acknowledging that

Amended Complaint, much like the original Complaint, fails to allege sufficient facts to state a plausible claim of state action on the part of these Defendants.  Therefore, Castillo's claims against Marisa R. Lopez Rodriguez, M.D.[9] and a John Doe Defendant are dismissed with prejudice as further amendment would be futile.  *See Jones*, 944 F.3d at 483.

      C.      **Claims Against Officers Guzley and Shade in their Individual Capacities[10]**

            1.      **Claims Regarding Entry of Castillo's Apartment**

As previously pled in the original Complaint, Castillo's Second Amended Complaint asserts that the Officers entered his apartment without a warrant.  (ECF No. 24 at 5.)  The Court again understands Castillo's pleading as seeking to bring a Fourth Amendment claim based on an illegal entry into his home.  As the Court previously set forth, the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "The Fourth Amendment

---

multiple Circuits "have held that the use of police officers to assist in 'the exercise of self-help' does not create a sufficient conspiracy with a private person to deprive an individual of their rights").

[9]     With respect to Marisa R. Lopez Rodriguez, M.D., the Court notes that the Second Amended Complaint makes no specific factual allegations regarding her individual actions or personal involvement in the alleged wrongs beyond identifying her as the supervisor of the John Doe Defendant who drew Castillo's blood.  Accordingly, the claims against her must again be dismissed based on Castillo's failure to plead her personal involvement.  *See Rode*, 845 F.2d at 1207.

[10]     The Court understands Castillo's Second Amended Complaint to be centered upon alleged violations of his Fourth Amendment rights with respect to the events of June 22, 2019, which occurred before he was detained pursuant to process.  The Court does not, however, read Castillo's Second Amended Complaint as seeking to challenge his subsequent prosecution, conviction, or imprisonment.  To the extent Castillo intended to bring such a challenge, such claims are not cognizable.  *See generally Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that 42 U.S.C. § 1983 does not provide a cause of action to recover money damages for an allegedly unconstitutional conviction or imprisonment where recovery would necessarily imply the invalidity of an outstanding criminal conviction ); *see also Gilles v. Davis*, 427 F.3d 197, 208–09 (3d Cir. 2005) (observing that "[u]nder Heck, a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings").

generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Additionally, "to search a person's home and belongings, police officers ordinarily must first seek a warrant based on probable cause supported by oath or affirmation. Warrantless searches are presumptively unreasonable under the Fourth Amendment." *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996). Here, Castillo alleges that the Officers "enter[ed] [his] apartment without a warrant." (ECF No. 24 at 5.) Accordingly, Castillo has sufficiently stated a plausible claim that the Officers violated his Fourth Amendment right to be free from unreasonable searches and seizures, and Castillo will be permitted to proceed on this claim.[11]

### 2. Claims Regarding Castillo's Arrest and Detention

Under a liberal reading of the Second Amended Complaint, it is possible that Castillo intends to bring a Fourth Amendment challenge that he was falsely arrested and detained in violation of his constitutional rights.[12] As the Court set forth in its prior Opinion, to state a claim for false arrest under the Fourth Amendment, a plaintiff must allege facts establishing that he

---

[11] Although there are exceptions to the warrant requirement, it is unclear at this early stage of the litigation whether any such exceptions apply.

[12] In the original Complaint, Castillo also sought to bring a § 1983 claim arguing that the Officers violated his right against self-incrimination under the Fifth Amendment in violation of *Miranda v. Arizona* because "no one read [Castillo his] Miranda rights" at any time from his "first contact with the officers to [his] arrival at Lehigh County Prison[.]" (ECF No. 2 at 7.) The Court dismissed this claim without prejudice. (ECF No. 10 at 10) ("It is well recognized that 'a plaintiff may not base a § 1983 claim on the mere fact that the police questioned her in custody without providing Miranda warnings when there is no claim that the plaintiff's answers were used against her at trial.'") (*citing Renda v. King*, 347 F.3d 550, 552 (3d Cir. 2003)).

Although the Second Amended Complaint generally indicates that Castillo is seeking relief for "deprivation of [his] rights under the . . . 5th Amendment[,]" (*see* ECF No. 24 at 3), Castillo does not make specific allegations regarding the lack of Miranda warnings and it appears he has abandoned any such claim. To the extent Castillo intended to raise a Fifth Amendment claim, he has again failed to state a plausible claim and this claim is dismissed with prejudice as amendment would be futile. *See Jones*, 944 F.3d at 483.

12
052820

was arrested without probable cause.  *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995).  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483.  To state a claim for false imprisonment, a plaintiff must establish that he was unlawfully detained, which, in the context of an arrest, generally depends on whether the detention was supported by probable cause.  *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012).

With respect to Castillo's original Complaint, the Court previously explained that Castillo failed to allege sufficient facts that would plausibly establish he was arrested or detained without probable cause, pointing to Castillo's conclusory, generalized allegations regarding the Officers' conduct leading to his arrest.  The Court dismissed these claims without prejudice, and granted Castillo leave to amend.  In doing so, the Court put Castillo on notice that upon amendment, he needed to point to factual allegations indicating that the Officers' lacked probable cause to arrest and detain him.  (ECF No. 10 at 12) (citing *Godfrey v. Pennsylvania*, 525 F. App' x 78, 80 (3d Cir. 2013) (per curiam) (explaining that, to the extent plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to facts suggesting that Defendant … lacked probable cause to believe he had committed the offense for which he was arrested").

A review of the Second Amended Complaint reveals the same deficiencies the Court previously identified.  (*See* ECF No. 24 at 5.)  Like the original Complaint, the Second Amended Complaint again specifically indicates that the police were called to the scene where Castillo and another individual had been involved in a physical altercation, again suggesting that the Officers

may have been acting directly in response to that call and potentially with probable cause.[13] Without a more detailed factual version of events leading to his arrest and detention, Castillo has not alleged a plausible claim that the arrest or detention was improper. Importantly, Castillo again fails to even allege the offense for which he was arrested.[14] The Court previously granted Castillo leave to amend to cure this deficiency, but in light of Castillo's continued failure to allege plausible claims in this regard, the Court dismisses these claims with prejudice. *See Jones*, 944 F.3d at 483.

### 3. Claims Regarding Excessive Force

Like the original Complaint, Castillo's Second Amended Complaint seeks to bring claims against Officer Guzley and Officer Shade for excessive force in violation of the Fourth Amendment. The Fourth Amendment prohibits a law enforcement officer from using "excessive force in the course of making an arrest, investigatory stop, or other 'seizure.'" *Graham v. Connor*, 490 U.S. 386, 388 (1989). "'Seizure' alone is not enough for § 1983 liability; the seizure" – including the force used to effect the seizure – "must be 'unreasonable.'" *Brower v. Inyo Cty.*, 489 U.S. 593, 599 (1989). To determine whether an officer's use of force was unreasonable, "a court must consider[ ] all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004). This includes an examination of "'the facts and circumstances of each

---

[13] The Court makes no determination regarding the existence of probable cause at the time of Castillo's arrest or detention.

[14] Although the Second Amended Complaint is silent on the nature of the offense for which Castillo was arrested, the Court takes judicial notice that Castillo was charged with aggravated assault, simple assault, disorderly conduct for engaging in fighting, and harassment for subjecting another to physical contact, and later pled nolo contendere to the aggravated assault charge. *See Commonwealth v. Castillo*, CP-39-CR-0003167-2019 (Lehigh Cty. Ct. of Common Pleas).

particular case, ... the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (citations omitted).

Here, Castillo alleges that after the Officers entered his apartment, they arrested him, put him in restraints, and escorted him to their police car. (ECF No. 24 at 5.)  He specifically asserts that the handcuffs used cut his left wrist.  (*Id.*)  Once inside the police car, Castillo contends that Officer Guzley "slam[ed] [his] face of [sic] the dashboard" of the vehicle "causing an open wound on the bridge of [his] nose, cuts to [his right] eyebrow . . ., and a black eye . . ., and head tra[u]ma."  (*Id.*)  Castillo's Second Amended Complaint further indicates that the wound on the bridge of his nose was open and bleeding, and that he also suffered a contusion on the back of his head and on his neck at the base of his skull.  (*Id.*)  Castillo alleges that this assault was "unprovoked" and describes his own behavior during the course of these events as "cooperative[.]"  (*Id.* at 6-7.)

Although "[n]ot every push or shove … violates the Fourth Amendment[,]" *see Graham*, 490 U.S. at 396, the facts alleged in the Second Amended Complaint, which the Court must accept as true, indicate that Castillo did not pose an immediate threat to the Officers' safety once he was restrained in handcuffs inside the police car.  Nor does it appear based on the facts alleged in the Second Amended Complaint that Castillo was actively trying to resist arrest or evade the police at the time the force was applied.  Construing Castillo's Second Amended Complaint liberally and accepting his allegations as true, the Court finds that the Second Amended Complaint contains sufficient factual matter to state a plausible claim for excessive

force against the Officers with respect to Castillo's arrest, restraint in handcuffs, and the events that occurred in the police car. *See Iqbal*, 556 U.S. at 678. Accordingly, this claim may proceed.

### 4. Claims Regarding Confiscated Property

In the original Complaint, Castillo sought to challenge the Officers' confiscation of his wallet, several forms of identification, glasses, and cell phone on the way to, and while at, the hospital. The Court previously construed these allegations as raising a claim for an illegal seizure in violation of the Fourth Amendment. The Court explained, however, that a search incident to an arrest does not violate the Fourth Amendment, and that a search of personal effects as part of a routine administrative procedure at a police station during booking is not unreasonable and does not violate the Fourth Amendment. (ECF No. 10 at 14) (citing *United States v. Robinson*, 414 U.S. 218, 234–35 (1973); *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983)).

With respect to his original Complaint, Castillo failed to assert facts indicating that the confiscation of his personal effects was anything more than a search incident to a lawful arrest or a search as part of a routine administrative procedure. (ECF No. 2 at 7.) Accordingly, the Court determined that without a more detailed factual version of events leading to his arrest and the subsequent confiscation of these items, Castillo failed to state a plausible claim. Despite having the opportunity to amend and allege additional facts that state a plausible claim, Castillo's Second Amended Complaint does not expand on the allegations he previously made. It simply reiterates that the Officers confiscated certain personal items prior to him being transported to the hospital and once he was there. As the Court previously explained, these generalized allegations, without more, do not state a plausible claim and are dismissed with prejudice as further attempts to amend would be futile. *See Jones*, 944 F.3d at 483.

16
052820

### 5. Claims Against the Officers Regarding Blood Draw

The Court also reads the Second Amended Complaint to challenge the drawing of Castillo's blood without his consent as an unlawful seizure by the Officers in violation of the Fourth Amendment. It is well established that "[b]lood draws are 'searches' under the Fourth Amendment." *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2543 (2019); *see also Anthony v. City of New York*, 339 F.3d 129, 142 (2d Cir. 2003) (recognizing that blood tests "constitute searches under the Fourth Amendment.") (citing *Schmerber v. California*, 384 U.S. 757, 767–68 (1966)). Where "officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Missouri v. McNeely*, 569 U.S. 141, 152 (2013).

With respect to Castillo's original Complaint, the Court previously dismissed the claims related to the blood draw on the basis that Castillo failed to allege sufficient facts suggesting that the blood draw was conducted by medical personnel based on a request or order from the Officers. From the face of the Second Amended Complaint, it again appears that Castillo's blood may have been drawn without a warrant. However, and more importantly, Castillo now alleges that the medical personnel were "instructed by the police" Officers "to take [his] blood[.]" (ECF No. 24 at 6.) He further alleges that the blood draw occurred "against [his] consent and . . . under the officers['] order to take [the] blood for alcohol and durg [sic] testing[.]" (*Id.* at 7.) Accordingly, in light of Castillo's amended allegations on this issue and accepting Castillo's allegations as true, Castillo has stated a plausible Fourth Amendment claim with respect to the warrantless blood draw that claim may proceed.

IV.     **CONCLUSION**

For the foregoing reasons, the Court dismisses the Second Amended Complaint in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, with the exception of the following claims against Officers Guzley and Shade in their individual capacities: (1) the Fourth Amendment claim related to the Officers' warrantless entry into Castillo's apartment; (2) the Fourth Amendment claims for excessive force during the course of his arrest; and (3) the Fourth Amendment claim related to the blood draw ordered by the Officers.  The Court will direct service of the Second Amended Complaint and a copy of this Memorandum and its accompanying Order on Officers Guzley and Shade.  An appropriate Order follows.

                              **BY THE COURT:**


                              */s/ Joseph F. Leeson, Jr.*
                              **JOSEPH F. LEESON, JR.**
                              **United States District Judge**