UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| CHARLIE CASTILLO, | : |
|     Plaintiff, | : |
| | : |
| v. | :   No. 5:19-cv-04002 |
| | : |
| OFFICER BRYAN GUZLEY and | : |
| OFFICER SHADE, | : |
|     Defendants. | : |

_____

**O P I N I O N**
**Defendants' Partial Motion for Summary Judgment, ECF No. 69 – Granted**

**Joseph F. Leeson, Jr.**                                                                     **January 11, 2022**
**United States District Judge**

## I.     INTRODUCTION

Plaintiff Charlie Castillo brought the above-captioned action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights that arose after the police responded to his apartment complex to investigate the report of a stabbing. Castillo claims that Defendants Officers Guzley and Shade violated his Fourth Amendment rights by unlawfully entering his apartment, by using excessive force during the course of his arrest, and by unlawfully ordering medical personnel to draw his blood. Defendants have filed a Partial Motion for Summary Judgment seeking dismissal of all claims expect for Castillo's excessive force claim against Guzley. For the reasons set forth below, the Motion is granted.

## II.     BACKGROUND

###     A.     Federal Rule of Civil Procedure 56(e)(2)

Rule 56(e)(2) of the Federal Rules of Civil Procedure provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact

as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."

In Defendants' Statement of Undisputed Material Facts, filed in support of its Motion for Summary Judgment, each numbered fact is properly supported by a citation to the record and the cited record is attached as an exhibit. *See* Defs.' Stmt. Facts and Exs., ECF No. 70. Castillo, however, has not filed a numbered statement of material facts in opposition to the Motion for Summary Judgment, as required by this Court's scheduling Order dated July 7, 2021, and by its Policies and Procedures, both of which outline the required content for briefs and responses to dispositive motions. *See* Policies and Procedures Section II(F); Order 2-3, ECF No. 48. Each warns the parties that "[a]ll facts set forth in the moving party's statement of undisputed facts shall be deemed admitted unless controverted." *See id.* Thus, consistent with Rule 56(e)(2) of the Federal Rules of Civil Procedure, Defendants' Statement of Undisputed Material Facts may be deemed undisputed. *See* Fed. R. Civ. P. 56(e)(2); *Robinson v. N.J. Mercer County Vicinage - Family Div.*, 562 F. App'x 145, 147, 149 (3d Cir. 2014) (holding that the district court did not err in concluding that the defendants' material facts were undisputed where the plaintiff failed to oppose the defendants' statement of material facts); *Schuenemann v. United States*, No. 05-2565, 2006 U.S. App. LEXIS 4350, at *15 n.7 (3d Cir. 2006) (holding that the district court properly deemed the defendants' statement of facts as undisputed for purposes of deciding the motion for summary judgment where the plaintiff failed to respond to each numbered paragraph of the defendants' statement of facts). Defendants have asked this Court to deem its statement of facts undisputed. *See* Reply, ECF No. 76. However, in light of Castillo's pro se status, the Court will not deem any fact undisputed to the extent such fact is contested in Castillo's responses to the

summary judgment motion and has any support in the record, including Castillo's deposition testimony.

B.      **Undisputed Facts**

On June 22, 2019, the Allentown police were dispatched to Walnut Manor Apartments for a report of a stabbing. *See* Collins Report, Ex. A, ECF No. 70-1.[1] Witnesses reported to the officers on scene that the assailant, later identified as Castillo, went to Apartment 101. *See* Shade Report. Officer Shade went to Apartment 101 and made contact with Castillo. *Id.* When Sergeant Collins arrived shortly thereafter, Officer Shade was speaking with Castillo in the hallway just outside his apartment door. *See* Body cam video, Ex. C, ECF No. 70-3. Castillo had been drinking. *See* Officer Reports; Pl. Dep. 25:20-23, ECF No. 70-2 ("I drank and I was on klonopin, so I was like a little disoriented at the same time even though I'm going in and out of – I'm not conscious out of -- like, I don't know how to say it – orientation."). Officer Shade and Sergeant Collins handcuffed Castillo before continuing their search for the stabbing victim. *See* Body cam video.

Castillo was taken to a patrol vehicle outside. Castillo alleges[2] that while in the front seat, sitting sideways, door open, Officer Guzley "slammed [Castillo's] head against the dashboard." Pl. Dep. 38:2-3. Castillo advised that the wanted to go to the hospital. *Id.* 38:2-4. Castillo testified that when the ambulance arrived, an officer told EMS to check Castillo and clear him so that he could be processed. *Id.* 39:12-13. After EMS arrived, Officer Shade walked back to lock Castillo's apartment and Officer Guzley found a Pa identification card for Castillo.

---

1         All the police officers' reports are included in Ex. A, ECF No. 70-1.
2         There is a genuine issue of material fact as to Officer Guzley's conduct.

*See* Shade Report.  Castillo refused treatment and insisted that he be taken to the hospital.[3]  *Id.* 38:4-7.

The hospital first encountered Castillo at 21:30 hours on June 22, 2019.  *See* Medical Records 5,[4] Ex. D, ECF No. 70-4.  The Records list the reason for Castillo's hospital visit as alcohol intoxication (primary), contusion of face, closed head injury, explaining that he arrived in police custody and had been in an altercation with another male.  Records 3, 5, 9.  Abrasion to the bridge of Castillo's nose with some tenderness and abrasion to his elbow are noted.  *Id.*  At 21:34 hours, the attending physician ordered the following labs: CBC and differential, comprehensive metabolic panel, and ethanol.  *Id.*  Additionally, the physician ordered a rapid drug screen-urine; cardiac monitoring; a CT cervical spine, and a head CT.  *Id.*  A few minutes later, a CT facial bones was also ordered.  *Id.*  By 21:45 hours, the attending physician ordered that Castillo be placed in restraints (on both arms and legs) because he was being uncooperative, was interfering with medical treatment, and was cursing, screaming, and spitting at staff.  *See* Records 7-8; Pl. Dep. 39:17 – 41:7.  At 22:14, 22:53 and 23:53 hours, the nurse checked Castillo's vitals and assessed his pain at "0."  *See* Records 12, 14, 16.  After all medical tests were completed, Castillo was discharged to the Allentown police on June 23, 2019, at 00:34 hours.  *Id.*  On June 23, 2019, Castillo was charged in connection with the stabbing.  *See* State Docket, Ex. E, ECF No. 70-05.  He thereafter pled nolo contendere to aggravated assault and

---

[3] Whether the officers called an ambulance to transport Castillo to the hospital or whether he insisted on going to the hospital is not material.

[4] The page numbering on the medical records is not sequential; therefore, this Court cites to the page numbers assigned to the medical records by the Court's Electronic Filing System.
  Additionally, to avoid any confusion, although Castillo has attached medical records to his brief in opposition because the records are included in Defendants' exhibit, only that exhibit is cited.  Castillo is advised that his exhibit was also considered.  *See* ECF No. 75.

was sentenced to imprisonment of not less than twenty-seven months to not more than sixty months. *See id.*

The above-captioned action was initiated on or about September 3, 2019, against several officers, medical staff, and the stabbing victim. Following screening and partial dismissal of the complaint and amended complaints, only the following claims against Defendants Officers Guzley and Shade remain: (1) the Fourth Amendment claim related to the Officers' warrantless entry into Castillo's apartment; (2) the Fourth Amendment claim related to the blood draw ordered by the Officers; and (3) the Fourth Amendment claims for excessive force during the course of his arrest. Defendants acknowledge that there is a genuine dispute of fact as to whether Officer Guzley used excessive force by slamming Castillo's head in the patrol car, but seek summary judgment on all other claims. *See* SJ Mem. 3, n.2, ECF No. 69. The motion is fully briefed. *See id.*; Opp., ECF No. 75; Reply, ECF No. 76.

## III. LEGAL STANDARDS

### A. Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows[5] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable

---

[5] *But see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (Where the non-moving party, after adequate time for discovery and upon motion, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment must be granted because "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

jury could return a verdict for the nonmoving party.  *Id.* at 257.  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. 317 at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The court must consider the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.* at 380.

   **B.**  **Unlawful Search and Seizure- Review of Applicable Law**

  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  "To search a person's home and belongings, police officers ordinarily must first seek a warrant based on probable cause supported by oath or affirmation.  Warrantless searches are presumptively unreasonable under the Fourth Amendment." *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996).  "However, certain circumstances can excuse the warrant requirement," including "an inventory search incident to a lawful arrest, objects in plain view of the officers, and exigent circumstances."  *Id.* (internal citations omitted).

  It is well established "[b]lood draws are 'searches' under the Fourth Amendment." *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2543 (2019); *see also Anthony v. City of New York*, 339 F.3d 129, 142 (2d Cir. 2003) (recognizing that blood tests "constitute searches under the Fourth

Amendment.") (citing *Schmerber v. California*, 384 U.S. 757, 767–68 (1966)). Where "officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Missouri v. McNeely*, 569 U.S. 141, 152 (2013).

      C.      **Excessive Force- Review of Applicable Law**

"[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test.") (citing *Graham*, 490 U.S. at 395). "Courts determine whether the force used is 'objectively reasonable' based on the totality of the circumstances, … and certain factors, including: 'the facts and circumstances of each particular case, ... the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (citations omitted).

"Caselaw establishes that tight handcuffing alone is insufficient to state a claim of excessive force. A plaintiff must demonstrate not only that the officer had notice that the force applied by the handcuffs was excessive under the circumstances, but also that the officer failed to respond to such notice in a reasonable manner." *See Kopec v. Tate*, 361 F.3d 772, 779 (3d Cir. 2004) (dissenting opinion).

IV.     **ANALYSIS**

     A.     **Castillo fails to present evidence to show a Fourth Amendment violation for an unlawful search or seizure.**

          1.     **There is insufficient evidence that Officer Shade unlawfully searched his apartment.**

Castillo testified that he was inside his apartment when Officer Shade first arrived, that they were talking through the door, but when the sergeant arrived, Officer Shade pushed open the door, "pushed me out the way and ran inside the apartment . . . searching the apartment." *See* Pl. Dep. 22:12-23, 27:5-9. Castillo claims that he told Officer Shade he was not supposed to be searching the apartment and "[s]hortly after that is when they [Officers Shade and Sergeant Collins] decided that they want to handcuff me and they came." *Id.* 27:10-20. This testimony is inconsistent with the reports of both officers. More importantly, Castillo's testimony is contradicted by video evidence. *See Allen v. Eckard*, 804 F. App'x 123, 126 (3d Cir. 2020) (affirming the entry of summary judgment where no reasonable factfinder could conclude that the officer-defendants used excessive force because videotape evidence of the incident blatantly contradicted the plaintiff's version of events). The body cam video from Sergeant Collins shows that when he arrived on scene, Officer Shade was speaking with Castillo in the hallway just outside the doorway to his apartment. The uninterrupted video shows both officers place Castillo in handcuffs shortly after speaking with him about whether he was armed. Officer Shade did not go into Castillo's apartment as he asserted. The video also confirms that police were attempting to locate the stabbing victim and did not know whether the victim needed medical attention. *See Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978) (holding that the "Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid"); *Boatner v. Salem*, No. 15-

595, 2015 U.S. Dist. LEXIS 174046, at *14-16 (W.D. Pa. Dec. 18, 2015) (granting the defendant summary judgment on the Fourth Amendment claim where the police entered the plaintiff's apartment without a warrant because they had reasonable cause to believe that an emergency situation existed and that the safety or welfare of the plaintiff or other residents of an apartment complex may be in jeopardy because, *inter alia*, there was a stabbing victim in the lobby of the complex where the plaintiff was a resident). Based on this evidence, no reasonable juror could find that an unlawful search was conducted by Officer Shade.

        **2.      There is no evidence that Officer Guzley unlawfully entered Castillo's apartment, searched his wallet, or unlawfully seized his ID.**

Castillo has failed to present evidence from which a jury could find that Officer Guzley unlawfully entered his apartment or searched/seized his wallet. Rather, Castillo merely assumes that Officer Guzley entered his apartment and seized his wallet. These assumptions are based on, first, the police report of Officer Shade, which stated that after EMS arrived, he walked back to lock Castillo's apartment and that Officer Guzley found a Pa identification card for Castillo. *See* Shade Report. Second, Castillo reasons that because he keeps his ID in his wallet and, third, because the officers "didn't take my ID out of my pocket then they must have taken it out of my house." *See* Pl. Dep. 37:18-21, 45:20 – 46:8. Castillo's belief that the officers did not take his ID from his wallet is because when he was put in the ambulance he felt either "the EMS or the cop" tapping his pocket and assumed, fourth, they were "taking stuff from my pocket." Pl.'s Dep. 37:11-14. But because he was later advised by EMS that there was no information on him, Castillo "now [] believe[s his wallet] was inside of the apartment." *Id.* 37:14-16. Notably, at the time of the original complaint, Castillo alleged that the officers confiscated his wallet "on the way" to the hospital. *See* Compl. 7, ECF No. 2. Aside from his assumptions, Castillo has offered no evidence that Officer Guzley was ever in his apartment or ever possessed/seized

anything other than Castillo's ID, or that anything was taken from his apartment. Pl. Dep. 45:2-3. Given the complete absence of evidence, Castillo cannot show a Fourth Amendment violation by Officer Guzley.

Summary judgment is granted in Defendants' favor on these claims.

**B.      Castillo's blood was not taken in violation of the Fourth Amendment.**

Castillo testified that "the officer told the nurse" to take his blood and check him for drugs and alcohol. *See* Pl. Dep. 41:12-14. Castillo offers no evidence, however, to identify the officer, instead stating "[t]here was like three officers, two officers, I'm not sure how many it was" at the hospital. *Id.* 42:4-6.

Moreover, the medical records show that Castillo's blood was taken by hospital staff for medical reasons. The records list the reason for Castillo's hospital treatment as alcohol intoxication (primary), contusion of face, and closed head injury. Medical scans, in addition to blood testing, were ordered. When tests for Castillo's blood ethanol were ordered, less than four minutes after being evaluated, a CBC and differential and a comprehensive metabolic panel were also ordered at the time. This evidence shows that the blood sample was drawn for medical, not investigatory, reasons and did not violate the Fourth Amendment. *See Doe v. Luzerne Cty.*, 660 F.3d 169, 179 (3d Cir. 2011) (quoting "*United States v. Attson*, 900 F.2d 1427, 1429 (9th Cir. 1990) (holding that a physician employed by the government who drew a blood sample from the defendant for medical, not investigatory, purposes did not conduct a 'search' under the Fourth Amendment)").

For all these reasons, summary judgment is entered in favor of Defendants on this claim.

**C. No reasonable jury could find that Castillo's handcuffs were so tight as to amount to a constitutional violation.**

Castillo testified that after he was put in the spit mask and four-point restraints at the hospital, Officer Shade grabbed the handcuff causing a lot of pain in his wrist. *See* Pl. Dep. 42:2-10. He also testified that the nurse told the officer to grab and hold Castillo, which is when Officer Shade "did something that caused me a lot of pain, even cut my wrist. It was torture. He used a form of torture with the handcuff." *See id.* 40:13-22, 47:13-16. However, evidence that he was in hospital restraints conflicts with his testimony that he was injured by the tight handcuffs applied by the officer's use of excessive force. *See Rosser v. Donovan*, No. 20-3278, 2021 U.S. App. LEXIS 32474, at *10-11 (3d Cir. Nov. 1, 2021) (agreeing with the district court that no reasonable factfinder could render judgment in the plaintiff's favor on his claim that his handcuffs were so tight as to amount to a constitutional violation because his complaint, deposition, statement of material facts, and affidavit contained contradictory and inconsistent stories). Also, there is no evidence that Castillo complained to Officer Shade or that he complained about the tight handcuffing to, or sought treatment from, hospital personnel for his wrists. *See Lugo v. DeAngelo*, No. 19-1442, 2021 U.S. Dist. LEXIS 189050, at *8-9 (E.D. Pa. Sep. 30, 2021) (concluding that no reasonable jury could find an excessive force claim where the plaintiff complained that the handcuffs were too tight in the presence of said handcuffing officer "but did nothing more," noting that the plaintiff did not experience any injury, did not present any corroborating evidence that the officer heard the request and refused, or that he sought medical treatment). Rather, the medical records reflect that throughout the night, Castillo's pain was assessed at zero. *See* Records 12, 14, 16. Therefore, Castillo has failed to present evidence from which a reasonable jury could find that Officer Shade's conduct caused a Fourth Amendment violation for excessive force.

V.     **CONCLUSION**

Castillo has failed to offer evidence from which a jury could find that his Fourth Amendment rights were violated based on a warrantless entry into his apartment by Officers Shade or Guzley.  Next, the medical records contradict Castillo's Fourth Amendment claim that his blood was unlawfully drawn at the direction of the officers.  Finally, Castillo's Fourth Amendment excessive force claim against Officer Shade relating to his handcuffs lacks evidentiary support.  Accordingly, summary judgment is entered in favor of Defendants and against Castillo on all but one claim: that Officer Guzley used excessive force as there is a genuine dispute of material fact.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge